## WHITFIELD v. HIGBIE.

### (Circuit Court, N. D. Illinois. July 24, 1895.)

1. PATENTS FOR INVENTIONS—INFRINGEMENT—GRAIN SEPARATORS.
    The first claim of letters patent No. 343,324, issued June 8, 1886, to Christian Kaspar, for an improvement in grain separators, consisting of a case formed with enlargement near its top, and deflector, in combination with inclosed screens, forming a zigzag grain channel fixed rigidly in the sides of the case, with an adjustable grate located in the enlargement to regulate the speed of the grain, and a gate operating between the grate and the deflector, is not infringed by a device having a fixed grate instead of an adjustable one.

2. SAME.
    The third claim of said patent for an inclined grate comprising longitudinal bars angular in cross section, and set at an angle in the plane of the grate surface, is not infringed by a device having round bars, not set at an angle.

In Equity.    Suit by Thomas Whitfield against Nathan B. Higbie to enjoin the alleged infringement of a patent.

Banning & Banning, for complainant.

Dyrenforth & Dyrenforth, for defendant.

SHOWALTER, Circuit Judge.    This is a bill to stop an alleged infringement of certain letters patent of the United States, and for an accounting.    Said letters patent, issued to one Christian Kaspar on the 8th of June, 1886, and numbered 343,324, and being for an improvement in grain separators, came to be the property of complainant by assignment.    The machine in question consists of an elongated upright box, containing at the top a hopper, formed by a plane inclined towards one side, leaving along the lower edge an opening, the size of which is regulated by a gate.    Next below this is a grate, inclined in the opposite direction, and having its bars towards its lower end or edge curved downward, and connected at their extremities by a crossbar.    Below said grate is a series of inclined screens and covers, connected, the lower edge of one with the upper edge of the next, in alternating angles, and forming a zigzag channel terminating in an opening on one side, and near the bottom of the box.    Grains poured into the hopper fall through the gate, then through the grate, then down the zigzag channel from side to side, and out at the opening in the bottom of the box.    Foreign substances,—straws, pieces of dirt, nails, chips, etc., larger than the grains,—being separated therefrom by the grate, fall over the lower edge of the grate, and down through a passageway next the side of

the box to the bottom of the box. Dust and particles of foreign matter smaller than the grains are separated therefrom as the grains fall on the successive inclined screens. Such smaller foreign substances also lodge in the bottom of the box, after passing through the screens, and being deflected and kept from re-entering the zigzag grain channel by the covers. The foregoing description will answer in general as well for defendant's machine as for complainant's. It is said that the first and third claims are infringed. The first claim is in words following:

"(1) In a grain separator, the case, A, formed with enlargement, a, near its top, and deflector, a², in combination with inclosed screens forming zigzag grain channel, B, fixed rigidly in the sides of the case; the grate, C, located in the enlargement, a, and adjustable at its lower end to regulate the speed of the grain flowing over it; and the gate, D, operating between the grate and the deflector, a², substantially as set forth."

The specification contains the following:

"When in position, the grate forms the cover of the upper section or step of the grain channel. Its upper end rests freely against the wall of the outside box or case, and its lower end adjustable at the angle of the channel, where a slotted strap, c⁴, and set screw or other suitable device, is employed to adjust that end more or less vertically, as may be required. It has been found that different elevations are required, according to the quantity of oats flowing through the cleaner. If the flow is heavy, the grate should be raised, which operates to scatter the stream to the sides, and so spread it that it will run through the grate before it reaches the end. A slight difference in adjustment makes a great difference in the action of the grate. There is a constant tendency in the grain, when it strikes the grate, to get 'wild,' and fly down its smooth surface and over its curved end into the waste channel below, instead of gravitating, as it naturally should, through the openings into the channel designed for it. This tendency has to be overcome and controlled by the adjustment of the screen to the pitch required to do perfect work."

A part of the combination claimed is "the grate, C, * * * adjustable at its lower end to regulate the speed of the grain flowing over it, * * * substantially as set forth." The mechanism—or some equivalent mechanism—described in the specification and shown in the drawing accompanying the specification for raising and lowering the end of the grate is part of the combination. In the machine as made by defendant the grate is fixed in position; it is not adjustable. There is not only no equivalent for the mechanism shown in complainant's specification, but no mechanism of any kind for changing the position of the lower end of the grate. Where a patent goes for a combination, every special matter named in the claim as entering into the combination is held essential. The patent, being on the combination, cannot be infringed by any combination which does not contain each element or an equivalent. Hence there is here no infringement of said first claim.

Of the eight claims made in the original application, the seventh only was allowed. Abandoning this, with the others, Kaspar presented three new claims. Of these, the third was in words following:

"(3) In a grain separator, the grate, C, formed of bars of uniform size throughout their length, and running longitudinally of the grate, and curved downward at their lower ends as shown, and a crosspiece connecting said bars

at their curved ends, whereby straw and similar refuse carried over said grate is readily discharged, and the clogging of the grate is prevented, substantially as set forth."

This claim also was disallowed, but it was signified to Kaspar, from the patent office, that said claim might be allowed if amended to the following:

"(3) In a grain separator, the inclined grate comprising longitudinal bars angular in cross section, of uniform size throughout their length, set with an angle in the plane of the grate surface, and curved downwards at their lower ends as shown, and a crosspiece connecting said bars at their curved ends, substantially as set forth."

This amendment was thereupon so made, the claim as so amended was allowed, and it is said that defendant has infringed the same. The specification contains the following words:

"At the upper end of the channel, B, I place a grate, C, arranged to cover the upper section of the said channel in its entire length and breadth. This grate may be struck up from a slotted plate of sheet metal, but I prefer the construction here shown. This construction involves a corrugated casting, c, a plain, bottom clamping plate, $c^1$, and a leather or other flexible packing, $c^2$, at each end, with a series of bars or angle iron, $c^3$, or other suitable forms, bent as shown, and secured by means of bolts between the plates above described. It will be observed that by constructing the grate of parallel bars angular in cross section, and arranging them as shown, they present a sharp angle to the plane of the grate, whereby their inclined sides are utilized to carry the grain laterally, and direct it downward through the spaces between the bars. These bars, furthermore, are arranged longitudinally, and as near together as may be found practicable with different kinds of grain. If the grain is small, the grate should be finer than when it is course. To clean oats, the proper space between the bars is about five thirty-seconds of an inch. The bars should be highly polished, so as to facilitate the distribution and discharge of the grain as it is delivered upon the grate. They are curved at their lower ends, so as to clean themselves of sticks, nails, and the like, which, in sliding down the open spaces between the bars, will strike against the inner clamping bar, and be titled and thrown out, thus avoiding clogging at this point, and the obstruction of the grate, which might occur if the bars were straight."

In the grate as made by defendant the bars are round. They are not "angular in cross section," nor are they "set with an angle in the plane of the grate surface." If said third claim as proposed by Kaspar had been allowed, defendant's grate would prima facie, and apart from the prior art, have been an infringement. But Kaspar yielded to the demands in the patent office, so that said third claim as allowed must be distinguished in construction from the third claim as so abandoned and relinquished. A grate having bars "angular in cross section," and "set with an angle in the plane of the grate surface," cannot, in view of the proceedings in the patent office, be treated as an equivalent for a grate like that used by defendant, namely, a grate with round bars. Even apart from said patent-office proceedings,—since the claim in a patent is the patentee's own definition of his rights,—it would seem to involve a disregard of words which a court could hardly justify to say that a claim for a grate-having bars "angular in cross section," and "set with an angle in the plane of the grate surface," means a grate with round bars.

I think, in view of the suggestions made, there was no infringement of the third claim. The bill is therefore dismissed for want of equity.